# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>JAMES DAMAS and<br>MARIA KOLETTIS,<br><br>　　　　　　　　Debtors<br><br>JAMES DAMAS and<br>MARIA KOLETTIS,<br><br>　　　　　　　　Plaintiffs<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>on behalf of Carolyn W. Colvin,<br>Acting Commissioner, Social<br>Security Administration,<br><br>　　　　　　　　Defendant | Chapter 7<br>Case No. 12-15313-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-1331 |

### MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

By their complaint in this adversary proceeding, the plaintiffs and chapter 7 debtors, James Damas ("Damas") and Maria Kolettis ("Kolettis"), seek under 11 U.S.C. §§ 553(b) and 547(b) to recover three setoffs of Supplemental Security Disability Insurance ("SSDI") benefits owed by the Social Security Administration to Damas against and in partial satisfaction of a reciprocal debt owed by Damas to SSA on account of earlier benefit overpayments.  The matter is before the Court on cross motions for summary judgment as to both counts.  For the reasons set forth below, the Court concludes that the defendant is entitled to judgment as a matter of law.

**Procedural History**

On June 21, 2012, Damas and Kolettis filed a joint petition for relief under chapter 7 of the Bankruptcy Code. In their bankruptcy case, they filed the complaint commencing this adversary proceeding (as amended, the "Complaint"). The Complaint identifies the defendant as Michael J. Astrue, Commissioner, Social Security Administration. The answer was filed by "the United States of America, for defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration." I take the complaint to be one against the United States, through its Social Security Administration (the "SSA"). The United States opposes all three counts.

The Complaint asserts three counts. In Count I, the plaintiffs seek to recover the amounts setoff, a total of $1,790, under 11 U.S.C. § 553(b) (permitting recovery of certain amounts offset within 90 days before a bankruptcy filing). In Count II, and in the alternative, they seek to recover the same amounts under 11 U.S.C. § 547(b) (permitting avoidance of preferential transfers). Count III, for recovery of the same amounts "pursuant to the equitable powers of this court," has been withdrawn.[1] The United States opposes the remaining counts.

The Complaint is before the court on cross-motions for summary judgment. The plaintiffs moved first, seeking summary judgment as to Counts I and II. In support of their motion they submitted a declaration of Marcia Wagner, a Social Insurance Specialist in the Office of Disability Operations of the SSA. The United States filed a brief in opposition, entitled "Memorandum of Law in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment." Having received no separate motion by the United States, the Court entered an order construing the United States' memorandum as in part the motion for summary judgment that it purported to support. The United States' motion also seeks summary judgment as to Counts I and II.

---

[1] Plaintiff's Motion for Summary Judgment, at 3 n. 4.

The United States adduced no additional evidence either in support of its motion or in opposition to the plaintiffs' motion.

**Facts**

No material fact is controverted. Since July 2005, Damas has received monthly SSDI payments from the SSA. On January 26, 2011, the SSA determined that Damas had for some time received greater SSDI payments than he was entitled to receive, that he had consequently been overpaid a total of $21,748, and that he was indebted to the SSA for repayment of this amount. In order to recover the overpayment, in January 2011, the SSA began withholding $605 per month from Damas' SSDI benefits. On March 23, 2012, the ninetieth day before the plaintiffs filed their bankruptcy petition, the remaining balance on the overpayment debt was $13,278. In the ninety-day period immediately preceding the plaintiff's bankruptcy filing, the SSA made three payments to Mr. Damas: one on each of April 10, May 8, and June 12, 2012. Each payment was for $1,185, which amount was $605 less than it would have been but for the setoff effectuated to recover the overpayment. On June 21, 2012, when the plaintiffs filed their bankruptcy petition, the balance on Damas's overpayment debt to the SSA was $11,463. On March 23, 2013, the ninetieth day before plaintiffs filed their bankruptcy petition, the balance on the same debt was $13,278. On July 11, 2012, after the SSA was informed of Damas's bankruptcy filing, the SSA stopped withholding any portion of Damas's benefit checks and began paying him $1,790 per month.

**Positions of the Parties**

I begin by noting what is not in controversy. First, although the complaint is brought in the name of both debtors, the debtors do not contend that the rights asserted belong at all to Kolettis— they are Damas's alone; only his SSDI benefits were withheld, and only he was obligated to the SSA for the overpayment against which they were setoff. If Damas were to prevail here, his recovery would

3

belong to his bankruptcy estate, not also Kolettis's, and be subject to his claim of exemption. See 11 U.S.C. § 302(b) (the filing of a joint case does not create a consolidated estate except to the extent that the court may so determine). There has been no consolidation of estates here. Damas is the only real plaintiff.

Second, the rights of avoidance and recovery that Damas asserts are rights that the Bankruptcy Code, in §§ 547(b) and 553(b)(1), gives in the first instance to a trustee; but, in § 522(h) the Bankruptcy Code permits a debtor in certain circumstances to exercise those rights in lieu of the trustee. 11 U.S.C. §§ 522(h), 547(b), and 553(b)(1). Damas contends, and the United States does not dispute, that he may exercise those rights here. The parties disagree on whether there is a right of recovery or avoidance, but they agree that Damas has standing to assert whatever rights those sections may afford a trustee.

Third, the parties agree that the transactions in issue are setoffs and, as such, subject to whatever rights of recovery are afforded for "offsets" within the meaning of 11 U.S.C. § 553(b). They disagree on the extent to which these setoffs may be recovered, but not that § 553(b) applies.

Fourth, for purposes of application of 11 U.S.C. § 553(b) and the determination of "insufficiency" that it requires, the parties also agree that the amount owed by the SSA to Damas on the date ninety days before the filing of the bankruptcy petition was $5,370—that is, three benefit payments of $1,790, for April, May, and June 2012.[2]

The parties disagree on only two issues of law. First, with respect to the application of § 547(b), Damas argues that the setoffs in question are transfers within the meaning of 11 U.S.C. § 101(54) (defining "transfer" for purposes of Bankruptcy Code) and therefore subject to avoidance under § 547(b) (permitting avoidance of certain "transfers"). The United States argues that the term "transfer"

---

[2] The parties having agreed on this, I need not rule on the issue, but I note that it is consistent with the approach taken by the Court of Appeals for the Third Circuit in *In re Schweiker*, 739 F.3d 870, 877 (3rd Cir. 1984) ("[w]e believe that all of the monthly benefits that came due before the filing of the petition should be considered obligations of SSA to the beneficiary ninety days before the petition is filed for the purposes of applying the 'improvement in position' test, even though they are not yet payable").

4

excludes setoff, the intent of Congress being to remove setoffs from § 547(b) and to make special provision for them in § 553, such that Damas's rights of recovery are limited to those in § 553(b).  The United States does not contend that the transactions in question fail to satisfy any other requirement of § 547(b).

Second, the parties agree that § 553(b) applies to the three setoffs in issue and therefore that they may be recovered "to the extent that any insufficiency on the date of such setoff is less than the insufficiency . . . 90 days before the date of the filing of the petition."  11 U.S.C. § 553(b)(1).  They disagree over the extent, if any, to which there was a decrease in the "insufficiency" within the meaning of this subsection.  The United States contends that the insufficiency did not decrease at all, and therefore that no amount may be recovered; Damas contends that the insufficiency decreased by precisely the amount of the setoffs, such that their full amount may be recovered.

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows there is no genuine issue as to any material fact and moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.  "A 'genuine' issue is one supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (internal citations omitted).  A "material" fact is one that has "the potential to change the outcome of the suit under the governing law" if the dispute is resolved in favor of the nonmoving party.  *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314-15 (1st Cir. 1995).  In dealing with cross-motions for summary judgment, a court "must consider each motion separately, drawing inferences against each movant in turn."  *Blackie v. State of Maine*, 75 F.3d 716, 721 (1st Cir. 1996).  In the instant case, the material facts are not in dispute; the disputed issues are entirely of law.

**Discussion**

    a.    **Count I:  Recovery under § 553(b)**

Section 553 of the Bankruptcy Code recognizes and preserves creditors' rights of setoff under applicable non-bankruptcy law.[3]  11 U.S.C. § 553(a).   However, subject to exceptions not applicable here, § 553 also permits a trustee—or, as here, a debtor acting under § 522(h)—to recover from the creditor any amount offset within ninety days immediately preceding the date of the bankruptcy filing *to a defined extent*.  11 U.S.C. § 553(b).  Specifically, the trustee may recover the amount so offset "to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of (A) 90 days before the date of the filing of the petition; and (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency."  11 U.S.C. § 553(b)(1).  For purposes of this subsection, "'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." 11 U.S.C. § 553(b)(2).

Accordingly, a trustee may recover a setoff under 11 U.S.C. § 553(b)(1) to the extent that the creditor improved its position within the ninety-day period preceding the debtor's bankruptcy petition.  Application of the improvement-in-position test is strictly mathematical.  *Fox v. Veterans Administration (In re Fox)*, 62 B.R. 432, 434 (Bankr. D. R.I. 1986); *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1040 (5th Cir. 1987) (following *Fox*).  First, calculate the insufficiency, or the amount by which the claim of the creditor exceeded the debt owing to the debtor, on the date of setoff; second, calculate the same figure for the ninetieth day prior to the filing of the bankruptcy petition or, if later, for the first date during the ninety-day period when the amount of the claim of the creditor exceeded the debt owing to the debtor; and third, compare the two figures.  If the former is less than the latter, there is a decrease in insufficiency, and the creditor must return the difference.  *Fox*, 62 B.R. at 434 (citing 4 Collier on

---

[3] Damas does not dispute the validity of the setoffs.

Bankruptcy, ¶ 553.01 at 553-9); see also *In re Paragon Development Enterprises, Inc.*, 201 B.R. 254, 261-262 (Bankr. E.D. Cal. 1996).  Conversely, if there is no decrease in insufficiency, no recovery may be had.

I turn now to applying the formula to the present case.  The table below organizes the essential figures.  On the ninetieth day before the bankruptcy filing, Damas owed the SSA $13,278, and the SSA owed Damas $5,370, for an insufficiency of $7,908.[4]  When the SSA made each of the three payments, it applied $605 of it in partial satisfaction of the overpayment debt and gave the balance, $1,185, to Damas.  This reduced the amount of SSA's claim against Damas in three increments of $605, for a total reduction of $1,815, to a balance after the third reduction of $11,463.  Each payment also reduced the amount of Damas's claim against the SSA by $1,790, the total of the amount paid to him, $1,185, plus the amount credited to Damas's debt to SSA, $605, for an aggregate reduction of SSA's debt to Damas over the three payments to $0.  With each payment, the insufficiency did not decrease but actually increased by $1,185 per month, for a total increase of $3,555.[5]  Because there was no decrease in insufficiency, the extent to which the setoffs may be recovered is $0.

| Date | Amount of SSA's Claim against Damas (A) | Amount of Damas's Claim against SSA (B) | Insufficiency (amount by which A exceeds B) | Decrease in Insufficiency from 90th day before Petition Date |
|---|---|---|---|---|
| March 13, 2012 (90th day before bankruptcy petition) | $13,278 | $5,370 | $7,908 | NA |
| April 10, 2012 (date of first payment) | $12,673 | $3,580 | $9,093 | ($1,185) |
| May 8, 2012 (date of second payment) | $12,068 | $1,790 | $10,278 | ($2,370) |
| June 12, 2012 (date of third payment) | $11,463 | $0 | $11,463 | ($3,555) |

---

[4] There existed an insufficiency on the ninetieth day before the bankruptcy filing, and therefore that ninetieth day, and not a later date, is the date from which the change in insufficiency must be measured.
[5] Each dollar of setoff reduces the claim of the creditor against the debtor by the same amount as it reduces the claim of the debtor against the creditor.  That is, a setoff alone effects no change in insufficiency.  This is the nature of setoff:  each side loses as much as it gets.  Here, the insufficiency *increased* because SSA setoff only a fraction of what it owed Damas and paid him the balance, $3,555.

7

The plaintiffs agree with the shaded squares in this chart, concerning the calculation of the insufficiency on the ninetieth day before the bankruptcy filing and the amount of SSA's claim against Damas after each succeeding payment/setoff. They disagree with the remaining figures; without explanation or justification, they maintain that the amount of Damas's claim against SSA was unaffected by each of the three payments, and consequently that the insufficiency decreased by the total amount setoff, $1,815. This position is indefensible. On the date of each of the three setoffs, the debt from the SSA to Damas was reduced by $1,790: $605 by setoff, and $1,185 by payment to Damas. This is an uncontroverted fact that Damas simply fails to incorporate into the calculus. That is, he agrees on the applicable formula but errs in its execution. Damas is entitled to no recovery under § 553(b).

b.      **Count II:  Avoidance under § 547(b)**

Section 547(b) permits the avoidance of certain "transfers," 11 U.S.C. § 547(b) ("the trustee may avoid any transfer of an interest of the debtor in property . . . ."), and only "transfers." *Id*. For purposes of § 547 and title 11 in general, "transfer" is defined at 11 U.S.C. § 101(54). The definition, though broad in scope, does not expressly include setoff; and, as explained in *Braunstein v. Branch Group, Inc. (In re Massachusetts Gas & Electric Light Supply Co., Inc.)*, 200 B.R. 471, 473 (Bankr. D. Mass. 1996) (setoff is excluded from definition of transfer and therefore not subject to avoidance under 11 U.S.C. § 549), the legislative history shows that Congress considered the question and expressly elected to exclude setoff from the meaning of transfer. Accordingly, it is well-settled that setoffs are not transfers and therefore are not avoidable under 11 U.S.C. § 547(b). *Id*.; *In re Comer*, 386 B.R. 607, 608-609 (Bankr. W.D. Va. 2008); *In re Holyoke Nursing Home Inc.*, 273 B.R. 305, 309-10 (Bankr. D. Mass. 2002) (offsets are not transfers avoidable under § 547(b)); *Belford v. Union Trust Company (In re Wild Bills, Inc.)*, 206 B.R. 8, 12-13 (Bankr. D. Conn. 1997) (setoffs are not subject to avoidance under § 547(b); recovery of a valid setoff is governed exclusively by § 553(b)); see also *Lee v. Schweiker*, 739 F.3d 870, 873 n.4 (3d Cir. 1984) (where a setoff right is being asserted, § 553, rather than § 547, governs). "Congress intended to

8

exclude setoff from the 'transfer' definition in order to assure that setoff would be treated exclusively under the provision of § 553." *In re Holyoke Nursing Home Inc.*, 273 B.R. at 309 (internal citations omitted); see also 5 Collier on Bankruptcy ¶ 553.09[2][a] (the effect is that a 'setoff' is not subject to being set aside as a preferential 'transfer' but will be subject to special rules).  Thus, Damas's count for recovery of the withholdings under § 547(b) must fail.

**Conclusion**

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment is denied, and the United States' Cross-Motion for Summary Judgment is granted.  Judgment will enter dismissing the complaint on its merits.

Date:  January 6, 2014                                   _____
                                                                            Frank J. Bailey
                                                                            United States Bankruptcy Judge